## Sayers's Appeal.

1. An intestate died seised of land, leaving a widow and two minor children; an order to sell the minors' interest was awarded, under the Act of March 29th 1832, sect. 3, on the application of the guardian, because of its dilapidation, &c.: one of the minors died before the sale, which was confirmed; the other minor married and died in her minority, leaving her husband surviving, but no children. *Held*, that the proceeds of sale both of her original interest and her deceased brother's passed to the husband as personal estate and not to her collateral heirs.

2. If land be sold for a specific purpose, the surplus money, as between heirs and next of kin, is to be considered as land; but after it has vested in the person entitled it is to be treated as money, and on his death subsequently passes as personal estate.

3. Pennell's Appeal, 8 Harris 515, adopted.

November 17th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Greene county:* No. 295 of October and November Term 1874.

The appeal in this case was from the decree of the Orphans' Court distributing the balance in the hands of John S. Knox, guardian of Mary C. Lindsey, late Sayers, a minor child of E. S. Sayers, deceased; the ward having died in her minority.

The father died on the 19th of September 1865, intestate, leaving to survive him a widow and two children: Mary, then aged about fourteen years, and a son, Ephraim, a few months old. On the 26th of the same month, W. T. E. Webb was appointed guardian of the minor children.

On the 25th of December 1865, the guardian petitioned the court, setting forth that E. S. Sayers had died seised of a tavern in Waynesburg, a tract of eighty acres and a piece of seven acres of land in Franklin township; and some other pieces of real estate, and also an interest in other lands; the petition further represented that " said real estate is unprofitable to his said wards and in such a state of dilapidation and decay that it would be to the

interest of his said wards to have the same sold." He therefore prayed for an order to sell the real estate ; an order of sale was awarded. Shortly after this and before the day of the sale, Ephraim died. On the 31st of March 1866, the guardian reported that he had sold the tavern for $3532, " the widow's dower to be released," one-third of the purchase-money to be paid on the confirmation of the sale, the other two-thirds to be paid in two annual payments ; also the two parcels of land in Franklin township, for $2569, " the widow's dower to be released and the purchasers to receive a title to the whole estate, as well the interest of the deceased child as the widow and surviving child," the payments to be as those of the tavern ; that other parts of real estate were sold for $692, the widow's dower to remain in it, one-half of two-thirds to paid in one year, and the other in two years, &c. The sale was confirmed on the same day.

The peculiar arrangements as to the title were, in consequence of a parol agreement between the widow and the guardian, after the death of the son, by which not only the widow's dower, but her interest derived from her son, should be released ; and in consideration, it was agreed, that the widow was to have absolutely, certain other parts of the real estate of her husband, but as the guardian could not make her a deed, she agreed to wait until the daughter was of age, when she would execute a deed to her mother. After the confirmation of the sale, the widow executed to the purchasers a release of her entire interest.

Subsequently, Webb on his own application was discharged from his guardianship, and John S. Knox appointed in his place.

At December Term 1868, Webb settled his account, charging himself with the entire proceeds of the sale, and moneys arising from other sources, and showed in his hands a balance, $4531.90. This balance was paid to Knox. Mary afterwards married J. B. Lindsey, and died in the spring of 1870, intestate, leaving no children, but leaving her husband, to whom administration of her estate was granted. Knox, at June Term 1870, settled the account of his guardianship, showing in his hands a balance of $5062.62, which was the subject of the distribution under consideration.

The auditor, C. A. Black, Esq., after reporting the foregoing facts, said :—

* * * "The widow of E. Sealy Sayers, deceased, having made deeds to the purchaser of the real estate sold by the guardian according to the arrangement already spoken of, and suffered the proceeds to pass into the hands of the guardian as the property of his ward without objection, can have no claim upon the fund for distribution.

"The claimants are confined to James B. Lindsey, the husband of Mary C., who claims not only as administrator of her estate,

[Sayers's Appeal.]

but absolutely as the heir at law, and the brothers and sisters of E. Sealy Sayers, the father of Mary C., from whom the real estate descended. To which of these claimants the fund belongs, depends entirely perhaps upon its character at the death of Mrs. Lindsey.

"It is insisted by those who claim adversely to the husband, that although the sale by the guardian, Mr. Webb, was an actual conversion of the real estate into money, still its character as real estate for the purpose of descent was preserved, and retained this character after the death of Mrs. Lindsey, her husband can have but a life-estate in the fund, and at his death it will belong to them absolutely as next of kin. In support of this view, it is urged that the policy of law is hostile to the conversion of the real estate of minors into money, and that the Act of April 13th 1853, commonly known as the Price Law, being so beneficial and remedial in its purposes, that it should be held to be exclusive in its operation, and embrace all sales made under order of the Orphans' Court, where a fund is left for distribution.

"This view, however, your auditor cannot adopt. The law may be adverse to the conversion of the real estate of minors into money, but it is rather to save the estate of the minor from loss than to protect any contingent interest that might be affected by a conversion, and at any rate the argument can have but little force after the conversion has been effected, and we can see nothing in the act itself to warrant the general application contended for. * * *

"The petition for the order of sale sets forth in the precise language of the third clause of the third section of the revised Act of March 29th 1832, and of its partial re-enactments by the first section of the Act of June 16th 1836, the reasons and purposes of the sale. The reason given is the dilapidation of the property, and the specific object "the interest of the minor." In view of the provisions of the Act of April 13th 1853, so minutely enumerated as to the petition, the order, the sale, the return and confirmation, and the acknowledgment of the deed, were observed by the guardian, and it is safe to conclude, that the proceedings were not under that act, but were under the prior law before referred to. * * *

"The act under which this sale took place recognises an absolute conversion, the object being money, whether raised by sale or mortgage, but makes no special provision for the transmission of any part of it. * * *

"Believing this to be the general rule governing the distribution of the surplus arising from sales in the Orphans' Court, under circumstances like the present, and that the Act of 1853 has not changed the course of descent, except as to sales made expressly under its provisions, your auditor decides, and so reports, that the fund for distribution * * * is to be paid to James B. Lindsey,

not only as administrator upon the estate of Mary C. Lindsey, his wife, but as absolute heir at law."

After exception by the brothers and sisters of the father of Mary C. Lindsey, the Orphans' Court, Gilmore, P. J., confirmed the report and decreed distribution accordingly.

The brothers and sisters of the father appealed to the Supreme Court and assigned for error, the decree of distribution.

*E. M. Sayers*, appellant, *p. p.*—The theory of our intestate laws is that estates shall not cross over from the family who acquired them to the family who had no part in their acquisition : Act of April 8th 1833, sect. 9, Pamph. L. 318, 1 Br. Purd. 808, pl. 27 ; Maffit *v.* Clark, 6 W. & S. 258 ; Grenawalt's Appeal, 1 Wright 95 ; Lloyd *v.* Hart, 2 Barr 473 ; Tilghman's Estate, 5 Wharton 65 ; Dalzell on Conversion 92 ; Grider *v.* McClay, 11 S. & R. 224 ; Commonwealth *v.* Pool, 6 Watts 32 ; Biggert's Estate, 8 Harris 17 ; Clepper *v.* Livergood, 5 Watts 113 ; Hays's Appeal, 2 P. F. Smith 450.

*C. A. Black* (with whom were *Wyly & Buchanan*), for appellée, cited : Holmes's Appeal, 3 P. F. Smith 339 ; Grider *v.* McClay, 11 S. & R. 224 ; Pennell's Appeal, 8 Harris 515 ; Dyne *v.* Cornell, 4 Barr 359 ; Hays's Appeal, 2 P. F. Smith 449; Large's Appeal, 4 Id. 383.

Judgment was entered in the Supreme Court November 24th 1875,

PER CURIAM.—This case is governed by Pennell's Appeal, 8 Harris 515. Lewis, J., states the principle thus : "The general rule is that if land be sold for a specific purpose, the surplus money shall, as between the heirs and next of kin, be considered as land, so as to vest in the persons who would have been entitled to it had it remained unconverted. But after it has so vested in the persons entitled, it is to be treated as money in his hands, and, in case of his subsequent death, goes to his personal representatives as personal estate. It cannot retain its original character for ever." The previous cases are referred to and commented on in the opinion. The cases referred to by the appellants are not exceptions or contradictions, but were decided on the fact that there had not been conversion before the interests sustained had vested.

Decree affirmed with costs and the appeal dismissed.